O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL MITCHELL,                    )  Case No. CV 05-00810 DDP (RNBx)
                                     )
                    Plaintiff,       )  **ORDER GRANTING ATTORNEY'S FEES**
                                     )
        v.                           )  [Motion filed on February 13,
                                     )  2008]
METROPOLITAN LIFE INSURANCE          )
COMPANY; CB RICHARD ELLIS            )
LONG TERM DISABILITY PLAN;           )
UNUM LIFE INSURANCE COMPANY          )
OF AMERICA; ~~CB RICHARD ELLIS~~     )
~~MEDICAL PLAN; CB RICHARD~~         )
~~ELLIS LIFE INSURANCE PLAN;~~       )
~~CB RICHARD ELLIS~~                 )
~~PENSION/RETIREMENT PLAN~~,         )
                                     )
                    Defendants.      )
_____     )

    This matter comes before the Court on Plaintiff's motion for
attorney's fees.  After reviewing the materials submitted by the
parties and considering the arguments therein, the Court grants the
motion.

I.    **BACKGROUND**

    Plaintiff Michael Mitchell brought this ERISA action seeking
long-term disability ("LTD") benefits pursuant to a benefit plan

1   provided by his employer, CB Richard Ellis.  Mitchell claimed a

2   disability for several health problems, including chronic fatigue

3   syndrome, restless legs syndrome, hemochromatosis, and depression.

4   On December 3, 2007, the Court held that Mitchell was entitled to

5   recover benefits.

6        Mitchell claimed benefits with Metropolitan Life Insurance

7   Company ("MET").  MET initially denied Mitchell's claim because he

8   was "still working."  MET then denied Mitchell's appeal based upon

9   a lack of objective evidence that Mitchell was disabled under the

10  plan.  After the appeal, Mitchell filed a lawsuit against MET

11  seeking disability benefits.  For the first time during litigation,

12  MET raised the defense that it was not responsible for Mitchell's

13  claim because Mitchell's alleged disability had started in October

14  2003 when UNUM Life Insurance Company of America ("UNUM") was  the

15  administrator and insurer.  Mitchell next filed an administrative

16  claim for LTD benefits with UNUM, which denied the claim.

17       After a trial, the Court held that MET abused its discretion

18  in denying Mitchell's claim.  The Court further held that MET was

19  the responsible claims administrator and insurer for Mitchell's

20  disability.  (Findings of Fact and Conclusions of Law, December 3,

21  2007).  The Court issued Judgment in this action on January 15,

22  2008.  Plaintiff now brings a motion for attorney's fees under 28

23  U.S.C. § 1132(g).

24

25  **II.  DISCUSSION**

26       ERISA permits the Court, "in its discretion," to "allow a

27  reasonable attorney's fee and costs of action to either party."  28

28  U.S.C. § 1132(g).  The Ninth Circuit has held that "this section

1   should be read broadly to mean that a plan participant or

2   beneficiary, if he prevails in his suit under § 1132 to enforce his

3   rights under his plan, should ordinarily recover an attorney's fee

4   unless special circumstances would render such an award unjust."

5   Carpenters Health and Welfare Trust for S. Cal. v. Vonderharr, 384

6   F.3d 667, 674 (9th Cir. 2004) (internal quotation marks and

7   alterations omitted).  In this case, the Court has found that

8   "Plaintiff is entitled to an award of reasonable attorney's fees."

9   (Judgment, January 15, 2008.)

10      A.   Reasonableness of Attorney's Fees

11      The parties primarily dispute whether the amount requested by

12   Plaintiff's attorneys is reasonable.[1]  Attorneys' fees are

13   calculated using the "lodestar" method, where courts "multiply the

14   number of hours reasonably expended by the attorney(s) on the

15   litigation by a reasonable hourly rate."  McElwaine v. US West,

16   Inc., 176 F.3d 1167, 1173 (9th Cir. 1999).  "[T]he determination of

17   a reasonable hourly rate is not made by reference to the rates

18   actually charged the prevailing party."  Welch v. Metro. Life Ins.

19   Co., 480 F.3d 942, 946 (9th Cir. 2007) (internal quotation marks

20   omitted).  Instead, "billing rates should be established by

21   reference to the fees that private attorneys of an ability and

22   reputation comparable to that of prevailing counsel charge their

23   _____

24   [1]MET also contends that Plaintiff's attorneys did not comply
with the meet and confer requirements of Local Rule 7-3.
25   Plaintiff's attorneys suggest that they did attempt to meet and
confer with Defendants, although it appears that those attempts
26   occurred after filing of this motion.  Nevertheless, the Court will
hear the motion.  MET has not been prejudiced because it had
27   sufficient time to respond to the motion, for which Plaintiff's
attorneys provided more than minimum notice.  Further, the Judgment
28   in this action indicated that an attorney's fee motion was
forthcoming.

1   paying clients for legal work of similar complexity." <u>Id.</u>

2   (internal quotation marks omitted).  "When a party seeks an award

3   of attorneys' fees, that party bears the burden of submitting

4   evidence of the hours worked and the rate paid." <u>Carson v.</u>

5   <u>Billings Police Dep't</u>, 470 F.3d 889, 891 (9th Cir. 2006).

6          1.   <u>Hourly Rate</u>

7        Plaintiff's attorneys claim an hourly rate of $500 for

8   Glenn R. Kantor, $500 for Lisa S. Kantor, and $400 for Peter S.

9   Sessions.  (Pl.'s Mot. 7.)  The $500 hourly rate for partners and

10  $400 rate for Sessions became effective on January 1, 2008.

11       The Court finds that the 2008 prevailing market rate for

12  plaintiff-side partner-level ERISA attorneys is $400-575/hour.  <u>See</u>

13  <u>Hawkins-Dean v. Metro. Life Ins. Co.</u>, 2007 WL 2735684, at *1 (C.D.

14  Cal. Sept.18, 2007) (awarding senior partner $575/hour, associate

15  $350/hour, and law clerks $200/hour); <u>Rorabach v. Continental Cas.</u>

16  <u>Co.</u>, 2007 WL 867301 (C.D. Cal. March 16, 2007) (awarding

17  $450/hour).  Here, Plaintiff's attorneys have submitted

18  declarations that support rates within this range.[2] (Declaration of

19  Michael A. Vanic ¶¶ 8-9; Declaration of Caroline L. Elkin ¶ 7;

20  Declaration of Daniel Feinberg ¶ 8.)  They have further pointed to

21  several cases that found partners at Kantor & Kantor were entitled

22  to a $400 or $450 rate.  (Declaration of Glenn R. Kantor, Ex. A-E)

23  "Affidavits of the plaintiffs' attorney and other attorneys

24  regarding prevailing fees in the community, and rate determinations

25  in other cases, particularly those setting a rate for the

26

27       [2]Additionally, Plaintiff's attorneys submit a declaration of
28  at least one attorney that charges $650 hourly rate.  (Declaration
     of Ronald Dean ¶ 8.)

4

plaintiffs' attorney, are satisfactory evidence of the market rate." <u>United Steelworkers of Am. v. Phelps Dodge Corp.</u>, 896 F.2d 403, 407 (9th Cir. 1990). Based on the evidence in the record, the Court finds that Plaintiff's attorneys have submitted sufficient evidence to show that $500 is a reasonable rate for partners with significant ERISA litigation experience.

The Court finds that Sessions' $400 rate is reasonable.[3] Sessions graduated from the University of Southern California Law School in 1997, and has practiced insurance law on ERISA and non-ERISA matters since then. Sessions joined Kantor & Kantor in 2004, and estimates that he has handled 75 ERISA cases while at the firm. Courts have found a $350 rate for associates to be reasonable. <u>See, e.g.</u>, <u>Hawkins-Dean</u>, 2007 WL 2735684, at *1. Plaintiff's attorneys submit evidence that associates with ERISA experience similar to Sessions have charged rates exceeding $400, and courts have found those rates to be reasonable. (Declaration of Teresa S. Renaker ¶ 12; Declaration of Peter Sessions, Exh. B.) Therefore, the Court finds the $400 rate reasonable.

MET takes issue with the $500 rate for partners because the majority of fees in this action were incurred prior to the January 1, 2008 rate increase, at times when the partners charged a $400 or $450 rate. (MET's Opp'n 5-6.) MET does not expressly challenge the rate for Sessions, but the Court presumes that it similarly disagrees with the request that Session's fees be assessed at his current rate. MET argues that Plaintiff's attorneys, if allowed to

---

[3]In moving for attorney's fees and in Sessions' declaration, Plaintiff's attorneys request $400 per hour for Sessions. Plaintiff's attorneys appear to misstate in their reply brief that the requested fee for Sessions' work was $450.

1    recover fees at their current rates, would receive a "windfall."

2    (Id.)

3        However, "[d]istrict courts have the discretion to compensate

4    plaintiff's attorneys for a delay in payment by . . . applying the

5    attorneys' current rate to all hours billed during the course of

6    the litigation." Welch v. Metro. Life Ins. Co., 480 F.3d 942, 947

7    (9th Cir. 2007). Allowing recovery at current rates encourages

8    plaintiff's attorneys to take cases on a contingency basis by

9    providing full compensation in exchange for successful enforcement

10   of statutory rights. See Washington Public Power Supply System

11   Securities Litigation Class Plaintiffs v. City of Seattle, 19 F.3d

12   1291, 1305 (9th Cir. 1994). In this case, Plaintiff's attorneys

13   had to expend significant time and effort in order to bring

14   administrative claims against both MET and UNUM,[4] and to ultimately

15   prevail at trial. To compensate for the delay in payment to

16   Plaintiff's attorneys, the Court finds that application of the

17   current $500 rate to all fees is appropriate.

18        2.   Hours Worked

19       The party seeking attorney's fees bears the burden of

20   submitting evidence to support the hours worked and rates claimed.

21   Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th

22   Cir. 2000). Plaintiff's attorneys have submitted detailed time

23   records. However, MET raises several specific objections. A

24   district court should exclude from calculation of the fee award

25   those hours that are "excessive, redundant, or otherwise

26   _____

27       [4]The Court notes that MET may have compounded the time of this
     litigation by asserting that UNUM was the proper administrator only
28   after Mitchell's administrative claim and long after Mitchell filed
     suit.

6

1    unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The

2    Court turns to consideration of MET's objections.

3                    a.    Time Drafting the Complaint

4          MET argues that Plaintiff's attorneys have billed 18 hours for

5    drafting the complaint and that this amount is excessive.  On the

6    time record for Glenn Kantor, the time entered for preparing the

7    complaint is 18 hours.  (Pl.'s Exh. I, at 64.)  However, in their

8    reply brief, Plaintiff's attorneys explain that the time entry is a

9    misprint and should read 1.8 hours.  Upon calculation of Mr.

10   Kantor's time entries, it is clear that the entry should read 1.8

11   hours.  The Court finds the 1.8 hours for the complaint reasonable.

12         Furthermore, the Court notes a clerical error in the

13   calculation of Mr. Kantor's time.  The total time for Mr. Kantor's

14   work should read 63 hours.

15                   b.    Time Spent Revising Briefs

16         MET next argues that Plaintiff's attorneys have billed

17   excessive and duplicative time to review and revise briefs.

18   Plaintiff's attorneys counter that the time was necessary due to

19   the complex issues presented by this case.

20         MET challenges the following entries for reviewing and

21   revising briefs:

22         February 20, 2007: Glenn Kantor records 3.3 hours and Peter

23         Sessions records 3.8 hours.  Sessions billed 9.9 hours to

24         draft the brief.

25         August 30, 2007: Kantor records 3.2 hours and Sessions records

26         3.1 hours.  Sessions billed 10.5 hours to draft the brief.

27         September 14-17, 2007: Kantor records 2.8 hours and Sessions

28         records 3.0 hours.  Sessions billed 8.9 hours to draft the

                                        7

1    brief.

2    October 1, 2007: Kantor records 2.1 hours and Sessions records

3    2.2 hours.  Sessions billed 7.8 hours to draft the brief.

4    (See Pl.'s Exh. I.)

5        The Court considers this time reasonable.  It is not unusual

6    for one attorney to draft a brief, for another attorney to review

7    and revise the brief, and then for the drafting attorney to make

8    final edits and changes.  Furthermore, the complicated legal and

9    factual issues in this case support the need for review and

10   revision of briefs.  Accordingly, the Court finds the time for

11   revising and reviewing briefs to be reasonable.

12                   c.   Time Spent Preparing for Deposition

13       MET also objects to Plaintiff's attorneys time spent preparing

14   for the deposition of Dr. Schmidt.  Lisa Kantor and Peter Sessions

15   collectively recorded 14.5 hours in preparation for Dr. Schmidt's

16   deposition, which was taken by Lisa Kantor.  Additionally, Glenn

17   Kantor, Lisa Kantor, and Sessions each billed for participation in

18   a conference call with MET regarding Dr. Schmidt's deposition, for

19   a total of 6.6 hours.  Plaintiff's attorneys emphasize that the

20   time was necessary because Dr. Schmidt was an important figure in

21   this case; MET largely based its denial of Mitchell's

22   administrative appeal on Dr. Schmidt's report.

23       The Court finds the majority of the time spent on Dr.

24   Schmidt's deposition was reasonable.  Plaintiff had to prove that

25   MET abused its discretion in denial of his claim.  This denial was

26   based in part on Dr. Schmidt's report.  In finding that MET abused

27   its discretion, the Court's holding was based in part on flaws in

28   Dr. Schmidt's approach to review of Mitchell's condition.  (See

                                    8

1 Findings of Fact and Conclusions of Law, December 3, 2007.)  In
2 light of Dr. Schmidt's role in denial of Mitchell's appeal and the
3 Court's ultimate conclusion regarding Dr. Schmidt's review, it was
4 reasonable for Plaintiff's attorneys to spend significant time
5 preparing for her deposition.

6       Nevertheless, some of the preparation time was likely
7 duplicative.  In preparing for the deposition, Lisa Kantor billed
8 5.4 hours and then took the deposition.  Sessions billed an
9 additional 9.1 hours, but did not take or attend the deposition.
10 Where Sessions did not take the deposition, the Court reduces
11 Sessions' preparation time to 5.5 hours. Plaintiff's attorneys are
12 otherwise entitled to fees for the time expended on preparation for
13 the deposition.

14       Furthermore, Plaintiff's attorneys do not explain the need for
15 three attorneys to participate in the conference call regarding the
16 deposition.  While Lisa Kantor and Peter Sessions were involved in
17 preparation for the deposition, Glenn Kantor does not appear to
18 have participated in preparation for the deposition, other than
19 drafting the notice of deposition.  Where Glenn Kantor was largely
20 not involved in preparation for the deposition, the Court considers
21 his time spent on the conference call to have been unnecessary.
22 Therefore, the Court reduces Glenn Kantor's hours by the 2.2 hours
23 that he participated in the conference call.

24            3.   The Fee Award
25       Based on the attorney's rates and hours worked, including
26 reductions, the Court calculates the following fee award:
27 Glenn Kantor      -    $500 X 60.8 hours = $30,400
28 Lisa Kantor       -    $500 X 29.9 hours = $14,950

1 Peter Sessions      -     $400 X 141.9 hours = $56,760

2      The Court also awards an additional $3400.00 in connection

3 with the motion for attorney's fees.[5]   Therefore, the total fee

4 award is $105,510.

5      B.   Costs

6      On January 30, 2008, Plaintiff filed an Application to Tax

7 Costs against MET.   The parties agreed that MET would not oppose an

8 amended Bill of Costs seeking $2,613.91.   Plaintiff's attorneys

9 itemize costs of $10,947.86 for this action.   (Pl.'s Exh. J.)

10 Initially, Plaintiff's attorneys sought the difference between the

11 $10,947.86 and the $2,613.91 already included in the Bill of

12 Costs.[6]   However, in light of MET's objection to reimbursement for

13 expert witness fees, Plaintiff's attorneys withdraw their request

14 for expert witness fees.   See Downey Community Hosp. V. Wilson, 977

15 F.2d 470, 474 (9th Cir. 1992).   Plaintiff's attorneys modify their

16 request to $1,827.80 in additional costs.   Since these costs do not

17 fall within those expressly covered by 28 U.S.C. § 1920, the Court

18 still must consider MET's argument that Plaintiff's attorneys are

19 only entitled to costs covered by 28 U.S.C. § 1920.

20      MET points to Agredano v. Mutual of Omaha Companies, 75 F.3d

21 541 (9th Cir. 1996), which held that the recovery of "costs of

22 action" under 29 U.S.C. 1132(g)(1) are limited to those costs

23 covered by 28 U.S.C. § 1920.   Id. at 544.   However, in Trustees of

24

25      [5]This amount includes Plaintiff's attorneys' request for $3000

26 for the reply brief.   The Court then awarded one additional hour at
Peter Sessions' $400 rate for attendance at the hearing on the

27 motion.

28      [6]This addresses MET's objection to including costs already
itemized in the Bill of Costs.

1  the Constr. Indus. & Laborers Health & Welfare Trust v. Redland

2  Ins. Co., 460 F.3d 1253 (9th Cir. 2006) [hereinafter "Trustees"],

3  the Ninth Circuit held that litigation expenses are recoverable as

4  part of "attorney's fees" under 1132(g)(2)(D), as long as "separate

5  billing for such expenses is 'the prevailing practice in the local

6  community.'" Id. at 1258-59 (citations omitted).  Although Agredano

7  limits costs under 29 U.S.C. 1132(g)(1) to those covered by 28

8  U.S.C. § 1920, Trustees endorsed awarding expenses as part of

9  attorney's fees even if not the kind of expenses normally covered

10  by 28 U.S.C. § 1920.  Id. at 1258 (citations omitted).[7]

11      Accordingly, the Court awards Plaintiff's attorneys expenses

12  as part of their attorney's fees.  However, to the extent that

13  Plaintiff's attorneys waived the right to a $185.00 pro hac vice

14  application fee in exchange for MET's non-opposition to their Bill

15  of Costs, the Court does not consider Plaintiff's attorneys

16  entitled to that cost.  The Court reduces the request by the

17  $185.00 application fee, and awards $1642.80 in expenses as part of

18  attorney's fees.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26

27      [7]The Ninth Circuit acknowledged that some costs, such as
expert witness fees, cannot be recovered as attorney's fees.

28  Trustees, 460 F.3d at 1258.

1   **III. CONCLUSION**

2        For the foregoing reasons, the Court GRANTS the motion.   The

3   total award including fees and expenses is $107,152.80.

4

5   IT IS SO ORDERED.

6

7   Dated: April 7, 2008                          _____

8                                                 DEAN D. PREGERSON
                                                  United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28